# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **CYNTHIA KRUKOWSKI**, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 10 C 5282 |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | Martin C. Ashman |
| **OMICRON TECHNOLOGIES, INC.**, | ) | |
| **MARILYN G. RABB FOUNDATION**, | ) | |
| and **LIONEL RABB**, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Cynthia Krukowski ("Krukowski") filed this action against Defendants Omicron Technologies, Inc. ("Omicron"), the Marilyn G. Rabb Foundation ("the Foundation"), and Lionel Rabb ("Rabb") (collectively, "the Defendants"), alleging sex discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, breach of contract, fraud, and consumer fraud. After the Defendants filed an initial motion to dismiss, Krukowski submitted an amended complaint alleging the same claims with greater specificity. The parties subsequently consented to this Court's jurisdiction, and the case was reassigned for all proceedings, including an entry of final judgment, pursuant to N.D. Ill. Rule 73.1. Before the Court now is Defendants' Motion to Dismiss Count II (ERISA), Count V (fraud), and Count VI (consumer fraud) alleged in the amended complaint. After careful consideration of the amended complaint and the parties' briefs, the Court finds that the motion should be granted in part and denied in part.

# I.  **Background**[1]

In May or June of 2009, Krukowski became an employee of Omicron, a consulting firm

based in Chicago, Illinois that specializes in developing software packages used in the student

information industry and in educational organizations.  *See* http://www.omicrontech.net/About.

Acting as a Senior Project Manager, Krukowski alleges that she performed job duties for both

Omicron and the Foundation, a non-profit organization dedicated to creating programs for young

people in the Chicago area.  *See* http://www.omicrontech.net/MGRF.  According to Krukowski,

Omicron and the Foundation are indistinguishable entities, with Defendant Rabb serving as the

Foundation's founder and as Omicron's president.

On July 29, 2009, Krukowski and Omicron memorialized their employment relationship

by entering an employment agreement.  In addition to the terms of employment, compensation,

and other job-related rights and obligations, the agreement guaranteed that Krukowski would be

able to participate in any health insurance plan maintained by Omicron on the same basis as

other Omicron employees as follows:

> Employee shall be eligible to participate in any employee benefit plans, medical
> insurance plans, life insurance plans, disability income plans, retirement plans,
> expense reimbursement plans and other benefit plans or programs made available
> to other employees of Employer as long as they are kept in force by Employer and
> provided that Employee meets all eligibility requirement and other terms,
> conditions and restrictions of such plans and programs.

As part of her employment, Omicron provided Krukowski with health insurance under a

group policy written by Aetna.  Krukowski, however, never received a summary plan description

---

[1]  For the purpose of this motion, the facts alleged in the amended complaint are taken as
true.  *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 463 (7th Cir. 2010).  The Court omits at this
stage a review of facts relating to Krukowski's Title VII allegations, which are not at issue in the
motion to dismiss.

of the Aetna group policy. Krukowski alleges that her coverage was cancelled on October 31, 2009, and that Omicron then transferred most of its employees covered by the Aetna plan to another health insurance plan held by the Foundation in December. When Krukowski sought emergency medical treatment in December, 2009 at Northwestern Memorial Hospital, however, she was told by the hospital's admission department that her medical insurance – which she alleges was the now-cancelled Aetna plan – was no longer valid.

Concerned by this news, Krukowski contacted Rabb, who told her that she was covered by medical insurance and that should she receive the medical treatment she needed. Krukowski did so, only to learn later that she was not, in fact, covered by any medical insurance by her employer. As a result, she incurred $10,000 in medical bills that were not covered by insurance. Krukowski was later terminated in January, 2010, and subsequently brought the instant suit.

## II. <u>Legal Standard</u>

Federal Rule of Civil Procedure 12(b)(6) provides that a party may move for the dismissal of a cause of action for failure to state a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) motions are analyzed in conjunction with the legal standard set forth in Rule 8, which requires that a complaint give the defendant fair notice of what the plaintiff's claims are and the grounds on which they rest. *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 510-12 (2002). In reviewing a motion under Rule 12(b)(6), a court accepts a complaint's fact allegations as true and draws all reasonable inferences in the plaintiff's favor. *Pugh v. Tribune Co.*, 521 F.3d 686, 692 (7th Cir. 2008). A plaintiff's legal conclusions, however, are not taken as true. *Ashcroft v. Iqbal*, — U.S. —, 129 S.Ct. 1937, 1949 (2009).

A complaint survives a Rule 12(b)(6) challenge when it contains sufficient factual material "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint need not be stated in such detail that it is probable the plaintiff will prevail; indeed, a complaint can survive dismissal "even if it strikes a savvy judge that actual proof of [its] facts is improbable[.]" *Id*. at 556. A plaintiff need only allege sufficient facts for a court to conclude there is a reasonable expectation that discoverable evidence will support the complaint's allegations. *Id*.

### III.  Discussion

Defendants argue that Count II (ERISA) in Krukowski's amended complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failing to state a claim, and Counts V (fraud) and VI (consumer fraud) should be dismissed under the same standard because they are preempted by ERISA. The Court begins by addressing the intricate and often entangled provisions at issue in Count II of the amended complaint, forewarned that ERISA's enforcement scheme constitutes a "Serbonian bog wherein judges are forced to don logical blinders and split the linguistic atom to decide even the most routine cases." *DiFelice v. Aetna U.S. Healthcare*, 346 F.3d 442, 454 (3d Cir. 2003).

### A.    Count II

Liberally construed, Count II of Krukowski's amended complaint alleges four violations of ERISA. By failing to notify her of the termination of her insurance within sixty days of being fired, the Defendants violated: (1) § 1024(b)(1), which requires a plan administrator to provide

participants with a summary description of modifications such as a material reduction of services or benefits within sixty days of the adoption of such changes, 29 U.S.C. § 1024(b)(1); and (2) § 1109(a), which makes a plan fiduciary who violates his statutory responsibilities personally liable to the plan for any losses that stem from the violation of those duties, 29 U.S.C. § 1109(a).[2] Krukowski further alleges that the Defendants' alleged failure to notify her that her health insurance coverage had been terminated violated: (1) § 1132(a)(1)(B), which permits plan participants to bring an action to recover benefits due under the plan, 29 U.S.C. § 1132(a)(1)(B); and (2) § 1132(a)(3), allowing participants to obtain equitable relief to address plan violations or to enforce the terms of a plan, 29 U.S.C. § 1132(a)(3).

1.  Section 1024(b)(1)

Section 1024(b)(1) of ERISA provides, in relevant part, that whenever a plan modification occurs "that is a material reduction in covered services or benefits provided under a group health plan . . . a summary description of such modification or change shall be furnished to participants and beneficiaries not later than 60 days after the date of the adoption of the modification or change."[3] 29 U.S.C. § 1024(b)(1). Although the parties do not specify which

---

[2] Although both Krukowski and the Defendants cite § 1109(a)(1) in referring to this claim, no such subsection exists under the statute. *See* 29 U.S.C. § 1109.

[3] On its face, § 1024(b)(1) applies to a plan's modifications, not its termination, and some courts have found that the failure to notify plan participants of a cancellation only violates the fiduciary duties set forth in 29 U.S.C. § 1104(a)(1)(B). *See Peralta v. Hispanic Business, Inc.*, 419 F.3d 1064, 1073 (9th Cir. 2005) (noting that ERISA does not expressly require notice of a plan's termination); *see also Rucker v. Pacific FM, Inc.*, 806 F. Supp. 1453, 1459 (N.D. Cal. 1992) (finding that § 1024(b)(1) does not apply to the termination of benefits because it would leave participants "without *any* coverage whatsoever" until the notice period expires). *But see*

(continued...)

portion of § 1024(b)(1)'s broad notice provisions are at issue in this case, the Court assumes that

Krukowski's allegation that she should have been notified within sixty days of changes in her

insurance coverage refers to the quoted language. (Amend. Compl. at ¶ 45.)

Citing the Seventh Circuit's decision in *Andersen v. Chrysler Corp.*, 99 F.3d 846 (7th Cir.

1996), the Defendants argue that Krukowski's claim under § 1024(b)(1) fails because such

"technical" violations of ERISA's notice requirements cannot support a claim for benefits or

damages. To some degree, this position is correct because *Andersen* and other Seventh Circuit

precedents have made clear that narrow violations of the various notice obligations imposed on

plan administrators by § 1024(b)(1) do not ordinarily give rise to a substantive cause of action.

*Andersen*, 99 F.3d at 859; *Panaras v. Liquid Carbonic Inds. Corp.*, 74 F.3d 786, 791 (7th Cir.

1996).

*Andersen*, however, carefully distinguishes the kind of statutory violation the Defendants

rely on from the one Krukowski alleges in the amended complaint. Technical violations are not

actionable, but this limitation does not apply when there is "a showing of bad faith, active

concealment or detrimental reliance." *Andersen*, 99 F.3d at 859; *see also Panaras*, 74 F.3d at

791 (recognizing a cause of action when a plaintiff alleges "exceptional circumstances" such as

"bad faith, concealment and prejudice"). Here, the amended complaint alleges that the

Defendants intentionally failed to notify Krukowski that she was no longer covered by

---

[3](...continued)
*Sampson v. Rubin*, No. 00-10215, 2002 WL 31432701, at *7 (D. Mass. Oct. 29, 2002) (assuming
that a plan cancellation falls within the 210 day notice provision of § 1024(b)(1)). As the
Defendants do not argue that § 1024(b)(1) does not apply to the termination of a plan's benefits,
the Court does not address at this stage whether or not Krukowski's claim falls within the statute.

Omicron's health plan, falsely represented that she had health insurance, and that, as a result, she underwent medical tests that cost her $10,000 in out-of-pocket expenses. These allegations are sufficient to bring Krukowski's claim within the exception noted by *Andersen*.

As the Seventh Circuit has recognized, the notice requirements of ERISA are designed "to alter the very balance of knowledge and rights between covered employees and their employer," *Panaras*, 74 F.3d at 793 (internal quote and citation omitted), and the type of injury Krukowski alleges clearly falls within the ambit of harm § 1024(b)(1) is designed to prevent. *See id.* ("The harm induced when employees rely on their employers' misrepresentations is perhaps most obviously apparent in the case of benefits, such as medical coverage[.]"). The Defendants have not noted the exception to the limitation on claims under § 1024(b)(1) and have not addressed why Krukowski's allegations do not sufficiently allege bad faith or detrimental reliance for her to avoid dismissal on her claim under § 1024(b)(1). In the absence of such an argument, the Court finds that the Defendants' have not shown why Krukowski has failed to state a cause of action under this ERISA provision.

### 2.    Section 1109(a)

Section 1109(a) of ERISA makes a plan fiduciary personally liable to the plan itself for any losses that result from the breach of a fiduciary duty, stating in addition that the fiduciary "shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary." 29 U.S.C. § 1109(a). As its language suggests, the statute only provides for a fiduciary's liability to the plan, not to a plan participant like Krukowski. *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985) (agreeing that "§ [11]09 inures to

the benefit of the plan as a whole."); *In re Amsted Inds., Inc. Litigation*, 263 F. Supp.2d 1126, 1129 (N.D. Ill. 2003) ("[P]laintiffs may seek money damages only to the extent that they are paid to the plan to restore any money lost due to the alleged breach."); *see also Tregoning v. Am. Comm. Mut. Ins. Co.*, 12 F.3d 79, 83 (6th Cir. 1993).

In this case, the amended complaint omits any reference to the fiduciaries' liability to the plan, seeking only damages and plan benefits for Krukowski herself – allegations that give rise to grave concerns as to whether § 1109(a) applies to Krukowski's ERISA claim. For reasons that are unclear, however, the Defendants do not present any specific argument on why Krukowksi's claim under § 1109(a) should be dismissed, noting only that she alleges a violation of that statute. (Def's. Mot. at 8-9.) In the absence of such an argument, the Court does not address whether Krukowski's claim under this section of ERISA can survive a Rule 12(b)(6) challenge.

Although a court may dismiss a cause of action *sua sponte* under narrow circumstances, *Eades v. Thompson*, 823 F.2d 1055, 1061 (7th Cir. 1987), the Court declines to do so at this stage because Krukowski has not sufficiently been put on notice that her claim under § 1109(a) may be deficient and has not been given an opportunity to respond to such an argument. In light of the Court's ruling below allowing her to replead, however, Krukowski is hereby notified that a continued assertion of the same claim under § 1109(a) in a subsequent amended complaint may lead the Court to consider the appropriateness of dismissal based on § 1109(a)'s requirement that money sought from a plan fiduciary be paid to the ERISA plan itself.

3.     Section 1132(a)(1)(B)

Section 1132 of ERISA provides six enforcement provisions that define how civil actions for statutory violations can be initiated. Section 1132(a)(1)(B) authorizes a plan participant or beneficiary to bring an action to recover benefits that are due under the plan or to clarify the participant's rights to future benefits. 29 U.S.C. § 1132(a)(1)(B). According to Krukowski, the Defendants' failure to notify her of the cancellation of her health insurance benefits violates the fiduciary duties imposed on a plan administrator under ERISA. As a result, she seeks, among other things, a clarification of her future rights, an award of past plan benefits, and what appears to be injunctive relief ordering the Defendants to cease any action that violates her rights under the plan. (Amend. Compl. at ¶ 47.)

Defendants contend that Krukowski's claim under § 1132(a)(1)(B) fails because she has brought this action against them as fiduciaries and plan administrators and not against the plan itself, as she is required to do under the statute. The Court agrees with this analysis. "It is well established that the proper defendant to a § 1132(a)(1)(B) suit is the plan." *Anderson v. Illinois Bell Tel. Co.*, 961 F. Supp. 1208, 1212 (N.D. Ill. 1997); *see also Riordan v. Commonwealth Edison Co.*, 953 F. Supp. 952, 956 (N.D. Ill. 1996) (noting "that § 1132(a)(1)(B) actions to recover benefits can only be brought against the plan as an entity."); *Estate of Suskovich v. Anthem Health Plans of Virginia, Inc.*, No. 06-CV-0425, 2007 WL 1165445, at *2 (S.D. Ind. April 17, 2007). As *Suskovich* recognizes, two exceptions exist to this rule: (1) where the plan and the employer are closely intertwined, and (2) where the plan cannot be readily identified. *Suskovich*, 2007 WL 1165445, at *3. Krukowski has not alleged that either of these exceptions applies in this case.

As Krukowski has not sued either Omicron's or the Foundation's health plans, her claim against the Defendants pursuant to § 1132(a)(1)(B) fails, and the Defendants' motion is granted on this issue.[4]

### 4.    Section 1132(a)(3)

Section 1132(a)(3) of ERISA allows a plan participant, beneficiary, or fiduciary to obtain equitable relief, including injunctive relief, to redress plan violations or to enforce the terms of a plan.  29 U.S.C. § 1132(a)(3).  This section establishes a catchall provision "offering appropriate equitable relief for injuries caused by violations" not adequately addressed elsewhere under ERISA.  *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996).  Unlike § 1132(a)(1)(B), this section of ERISA does not expressly limit the type of defendant against whom a claim can be brought.  *See Central States v. Comprehensive Care Corp.*, 864 F. Supp. 831, 833 (N.D. Ill. 1994).

---

[4]  The Court does not address Krukowski's contention that her claim survives because some of the Defendants were plan fiduciaries, as she has not shown how such allegations overcome the necessity of naming the plan itself as a defendant.  The Court notes that Krukowski's fiduciary claim under § 1132(a)(1)(B) appears to be a direct action to recover benefits for herself, but "[a]n action to recover from a breach of fiduciary duty . . . is distinct from an action to recover plan benefits under section 1132(a)(1)(B) of the Act."  *Anweiler v. Am. Elec. Power Serv. Corp.*, 3 F.3d 986, 992 (7th Cir. 1993).  Ordinarily, any recovery stemming from breaches of fiduciary duties "goes to the plan as a whole and not an individual beneficiary," and such claims should be brought pursuant to § 1132(a)(2) and § 1132(a)(3).  *Id.*; *see also Anderson*, 961 F. Supp. at 1212 and n.2.  Section 1132(a)(2), in turn, requires an action under § 1109(a), which makes fiduciaries liable to the plan, but not to an individual plaintiff.  *See* 29 U.S.C. § 1109(a); *Kessen v. Plumbers' Pension Fund, Local 130*, 877 F. Supp. 1198, 1205 (N.D. Ill. 1995).  Claims under § 1132(a)(3), moreover, are ordinarily considered to be mutually exclusive with claims under § 1132(a)(1)(B).  *See Rice v. Humana Ins. Co.*, No. 07 C 1715, 2007 WL 1655285, at *3-4 (N.D. Ill. June 4, 2007) (citing cases).

a.      Fiduciary Status

The Defendants first argue that Krukowski has failed to sufficiently allege that Omicron and the Foundation are plan fiduciaries.  Not surprisingly, "[a] claim for breach of fiduciary duty under ERISA is only valid against a 'fiduciary.'"  *Baker v. Kingsley*, 387 F.3d 649, 660 (7th Cir. 2004).  A person or entity can be an ERISA fiduciary only "to the extent [ ] he exercises any discretionary authority or control respecting management of such plan . . . or disposition of its assets," gives investment advice, or has discretionary authority in administering a plan.  29 U.S.C. § 1002(21)(A).  The Seventh Circuit has noted that the statute's use of the phrase "to the extent" means that one can be an ERISA fiduciary for some purposes but not for others.  *Baker*, 387 F.3d at 660.  Thus, courts must look to the individual's or the entity's role in the specific activity at issue in a given case.  *Id*.

The Defendants argue that the amended complaint has not alleged facts that meet this standard because, although it claims that Omicron and the Foundation were plan administrators, (Amend. Compl. at ¶ 37), it does not allege that they were fiduciaries or that they exercised any discretionary authority.  In support, the Defendants rely on the Seventh Circuit's decision in *Pohl v. Nat. Benefits Consultants, Inc*., 956 F.2d 126 (7th Cir. 1992) to contend that the fact that an entity serves as a plan administrator does not automatically make it a fiduciary.  *See Pohl*, 956 F.2d at 128-29.  This argument is correct, but the facts of *Pohl* are distinguishable from the allegations in the amended complaint.  In that case, the Seventh Circuit based its decision on findings that the administrator's role under the plan involved only "clerical, mechanical, ministerial – not discretionary" duties.  *Id*. at 129.  By contrast, Krukowski's allegations do not support such a finding, and the Court has no basis on which to decide if Omicron's and the

Foundation's alleged roles as plan administrators were so minimal or non-discretionary that these Defendants cannot be ERISA fiduciaries as a matter of law.

Krukowski argues that her pleading supports a finding of discretionary authority because the fact that Omicron and the Foundation chose to terminate the insurance policy necessarily implies their authority to do so. Likewise, she contends, the fact that they chose to transfer Omicron's employees to the Foundation's health plan also means that they acted with the kind of discretion required to be a fiduciary under ERISA. The amended complaint does not fully support the first of these claims, as it only alleges that Omicron, not the Foundation, transferred Omicron's employees to the Foundation's health plan. (Amend. Comp. at ¶ 41.) Krukowski does allege, however, that both Defendants acted to terminate her health plan on October 31, 2009, before she was terminated. (*Id*. at ¶ 35.)

These allegations are indeed minimal, but the Court disagrees with the Defendants that they fail to sufficiently allege a fiduciary status. *Twombly* teaches that a complaint's fact allegations giving notice of a plaintiff's claim need only be concrete "enough . . . to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's claims. *Twombly*, 550 U.S. at 556; *see also Erickson v. Pardus*, 551 U.S. 89, 93 (2007) ("Specific facts are not necessary[.]"). The Court must draw all reasonable inferences in Krukowski's favor, *Pugh*, 521 F.3d at 692, and it concludes in this case that discovery could show that the discretion involved in the allegation that Omicron and the Foundation acted to transfer Omicron's participants to the Foundation's health plan was such that both Defendants could qualify as fiduciaries under ERISA. As such, Krukowski has met her burden at this point in the litigation.

As many courts have recognized, determining a fiduciary status under ERISA frequently involves fact issues that are best left for a decision after the dismissal stage. *See George v. Kraft Foods Global, Inc.*, 674 F. Supp.2d 1031, 1049 (N.D. Ill. 2009); *see also Kramer v. Smith Barney*, 80 F.3d 1080, 1084 n.2 (5th Cir. 1996) ("The existence of a fiduciary relationship under ERISA, on the merits, is a mixed question of law and fact."); *Will v. General Dynamics Corp.*, No. 06-698, 2009 WL 3835883, at *2 (S.D. Ill. Nov. 14, 2009) ("[I]n the absence of allegations in a complaint affirmatively showing that a party is not an ERISA fiduciary, ordinarily the question of fiduciary status is factual and not appropriate for resolution on the pleadings.").

Accordingly, the Court also finds that questions related to the fiduciary status of Omicron and the Foundation are more appropriately decided on their merits at a later date, when both the parties and the Court can be guided by relevant evidence.

b.      The Nature of Krukowski's Claims

The Defendants also argue that Krukowski has not asserted a cause of action because she seeks benefits allegedly owed to her under the plan, and § 1132(a)(3) does not provide for such relief. As Defendants correctly note, an award of money damages – which Krukowski does not dispute is part of what she seeks – is a form of legal relief, and § 1132(a)(3) only provides for equitable remedies. *See Mondry v. Am. Fam. Mut. Ins. Co.*, 557 F.3d 781, 804 (7th Cir. 2009) (finding that "the 'equitable relief' authorized by section 1132(a)(3) will normally not include monetary relief, even when the plaintiff asserts that an ERISA plan entitles him to the money he seeks"); *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1491 (7th Cir. 1996) ("Monetary damages also do not constitute 'other appropriate equitable relief' under [§

1132(a)(3) of] ERISA.").  As the Seventh Circuit has recently reaffirmed, § 1132(a)(3) does not permit money damages even when a plaintiff has detrimentally relied on assurances of plan coverage.  *Smith v. Medical Benefit Administrators Group, Inc.*, — F.3d —, No. 09-3865, 2011 WL 913085, at *5 (7th Cir. March 15, 2011).  Instead, a plaintiff seeking an award of money for benefits owed under an ERISA plan must turn to § 1132(a)(1)(B).[5]  *Mondry*, 557 F.3d at 804.

Krukowski does not address the equitable/legal nature of the relief sought under § 1132(a)(3).  Relying on the Ninth Circuit's decision in *Peralta*, *supra*, however, she suggests that her allegations that the Defendants deliberately induced her into believing that she was covered by a health plan bring her damages claim within the "other appropriate equitable relief" language of the statute.  29 U.S.C. § 1132(3)(B).  In *Peralta*, the Ninth Circuit stated that when an employer intentionally misleads a participant about coverage, and does so to the participant's detriment, "wrongs will be undone and means found to make benefits available" under § 1132(3)(B).  Krukowski's reliance on *Peralta* is misguided because, whatever the implications of this language may be, the Ninth Circuit found that money damages were unavailable to the plaintiff in that case.  *See Peralta*, 419 F.3d at 1076 ("That remedy, however . . . is simply not available in equity[.]").  As the Supreme Court has clearly stated, an action seeking to impose personal liability on a defendant for a contractual obligation of money under an ERISA plan is ordinarily legal, not equitable.  *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213-21 (2002).

---

[5]  Krukowski attempts to distinguish her case from *Mondry* by arguing that the Seventh Circuit's decision involved the appeal of a ruling on summary judgment.  Although the relevance of this argument is not entirely clear, *Mondry* involved an appeal from both a dismissal *and* a summary judgment, and the relevant claim in that case involving § 1132(a)(3) was disposed of on dismissal.  *See id.* at 803-04.

As a result, Krukowski has not shown how her claim for money damages is allowed under § 1132(a)(3). This does not mean, however, that all her allegations under this subsection of ERISA should be dismissed. The parties overlook that Krukowski also seeks a clarification of her rights under the plan, as well as an order prohibiting the Defendants from engaging in future actions that violate the statute. (Amend. Compl. at ¶ 47.) As none of the parties have discussed the equitable/legal nature of these claims, the Court does not address their propriety under § 1132(a)(3) except to note that an action to clarify a participant's rights under ERISA is ordinarily equitable in nature. *Roeder v. ChemRex, Inc*., 863 F. Supp. 817, 822-23 (E. D. Wis. 1994); *Whitt v. Goodyear Tire & Rubber Co*., 676 F. Supp. 1119, 1129 (N.D. Ala. 1987).

For these reasons, the Defendants' motion is granted as it concerns Krukowski's claim for monetary damages pursuant to § 1132(a)(3) but is denied on all other grounds related to that provision of ERISA.


### B.    ERISA Preemption

Having emerged from the "Serbonian bog" of ERISA's enforcement regime, *DiFelice*, 346 F.3d at 454, the Court now enters "the murky waters of ERISA preemption." *Trustees of AFTRA Health Fund v. Biondi*, 303 F.3d 765, 773 (7th Cir. 2002). Krukowski alleges that when she called Defendant Rabb from the hospital in December, 2009 and was told by him that she was covered by a health plan, all three Defendants became liable for her medical bills under state law theories of fraud (Count V) and consumer fraud (Count VI). The Defendants counter that these state law claims are preempted by ERISA and should be dismissed because Krukowski has failed to add the plan itself as a defendant in this case.

ERISA provides that it "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). The Seventh Circuit has described ERISA as constituting an especially "aggressive form of preemption" that is designed to reduce the use of state law to obtain benefits under ERISA plans. *Sharp Electronics Corp. v. Metropolitan Life Ins. Co*., 578 F.3d 505, 514 (7th Cir. 2009). As the statute's language suggests, the question of whether preemption applies centers on the extent to which a state law "relates to" an ERISA plan. This condition is satisfied when a state law "has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc*., 463 U.S. 85, 96-97 (1983).

Recognizing that the application of such broad language could lead to an overly expansive view of preemption, the Supreme Court has cautioned that courts should look to ERISA's objectives as a guide to the scope of the state laws Congress intended to survive preemption, as well as to the nature of the state law's effect on ERISA plans. *Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc*., 519 U.S. 316, 325 (1997). The Seventh Circuit has interpreted Supreme Court precedent as using this standard to identify three instances in which a state law connects with or refers to an ERISA plan: (1) the state law "mandate[s] employee benefit structures or their administration;" (2) the law "binds employers or plan administrators to particular choices or precludes uniform administrative practice, thereby functioning as a regulation" of an ERISA plan; or, (3) the state law "provides an alternative enforcement mechanism to ERISA." *Biondi*, 303 F.3d at 775 (internal quote and citation omitted). The last factor is satisfied when the existence of a benefit plan is a critical element of a state law action, or when a statute contains provisions that expressly refer to ERISA or ERISA plans. *Id*. at 776.

Determining the applicability of these factors requires an examination of the state law claims at issue. In order to establish an action for common law fraud in Illinois, Krukowski must show: (1) a false statement of material fact; (2) the Defendants knew or believed the statement was false; (3) Krukowski had a right to rely on the statement; (4) she, in fact, did rely on it; (5) the Defendants' statement was made to induce Krukowski to act; and, (6) Krukowski's reliance on it led to her injury. *Siegel v. Levy Org. Dev. Co., Inc*., 153 Ill.2d 534, 543, 607 N.E.2d 194, 198 (Ill. 1992). Under Illinois' Consumer Fraud Act, a plaintiff must allege: (1) a deceptive act made by the Defendants (2) that they intended Krukowski to rely on; (3) the deception occurred in the course of trade or commerce; and, (4) Krukowski's injury resulted from the deception. 815 ILCS 505/2 (West 2000); *White v. DaimlerChrysler Corp*., 368 Ill. App.3d 278, 283, 856 N.E.2d 542, 546 (Ill.App.Ct. 2006). Clearly, these state actions do not govern ERISA benefits or the administration of an ERISA plan, thereby eliminating the first two *Biondi* possibilities. The relevant issue, therefore, is whether Krukowski asserts her fraud claims as alternative vehicles through which to obtain the ERISA benefits she alleges are owed to her.[6]

Relying on *Vent Intensive Providers, Inc. v. Tropical Int'l Corp*., 38 F. Supp.2d 1366 (S.D. Fla. 1999), Krukowski argues that is not the case here because the termination of her health coverage in October, 2009 means that no ERISA plan was in place when the alleged fraud

---

[6] The fact that Illinois' tort of fraud is a law of general applicability does not, in itself, preclude a finding ERISA preemption. *See Powers v. Corn Prods. Int'l, Inc*., 557 F. Supp.2d 928, 935 (N.D. Ill. 2008) ("ERISA does not lose its preemptive force just because the Plaintiff brings an action for common law fraud."). Rather, ERISA preemption is based on the conduct governed by the state law, not the form of a cause of action. *See Scott v. Gulf Oil Corp*., 754 F.2d 1499, 1505 (9th Cir. 1985); *Smith v. Provident Bank*, 170 F.3d 609, 615 (6th Cir. 1999) ("It is not the label placed on a state law claim that determines whether it is preempted, but whether in essence such a claim is for the recovery of an ERISA plan benefit.") (internal quote and citation omitted).

occurred in December. *Vent* involved the question of whether federal question jurisdiction existed to support the removal of a suit brought by third-party medical providers against an employer for the reimbursement of payments made on behalf of a former employee whose health benefits had expired by the time of treatment. *Vent*, 38 F. Supp.2d at 1367-68. The court determined that ERISA did not preempt a breach of contract claim against the employer because: (1) the lapse in benefits coverage meant that no ERISA plan existed as of the date of suit, and (2) the plaintiff did not seek to enforce any rights under § 1132(a)(1)(B). *Id*. at 1367. Krukowski argues that the fact that Omicron's policy was terminated prior to her visit to the hospital also means that no ERISA plan exists, and thus her fraud claims cannot be preempted by reference to such a plan.

The Court finds this argument unpersuasive. Krukowski overlooks that *Vent* premised its preemption finding, in part, on the fact that the plaintiff in that case did not assert claims under § 1132(a)(1)(B), including a clarification of future ERISA rights. *Id*. As discussed above, however, Krukowski seeks this very remedy under § 1132(a)(1)(B). Moreover, Krukowski's claim that her complaint does not require the Court to interpret an ERISA plan or apply its terms is at odds with her ERISA allegations. The amended complaint plainly alleges that Krukowski should receive "benefits due and owing under her group insurance plan," asks that the Defendants "cease any action that violates the terms of her original insurance plan," and demands that they "provide a statement of vested benefits upon termination." (Amend. Compl. at ¶ 47.) Krukowski provides no explanation of why an ERISA plan is not at issue here when she seeks benefits and equitable rights allegedly owed under Omicron's insurance plan. She further argues that the Foundation's health plan is not a factor in this case because she was never

a Foundation employee. However, the amended complaint repeatedly alleges that Krukowski was an employee both of Omicron and the Foundation. (Amend. Compl. at ¶¶ 11, 14, 19, 34, 57, and 68.)

Krukowski also relies on *Harris v. JAT Trucking of Ill., Inc.*, No. 07-CV-2210, 2009 WL 2222740 (C.D. Ill. July 24, 2009), even though that case contradicts her apparent claim under *Vent* that an employee whose health coverage has lapsed cannot include the plan as an ERISA defendant. *See Harris*, 2009 WL 2222740, at *4 ("Here, the amended complaint includes the Plan as a party to the suit" for benefits under § 1132(a)(1)(B)). In *Harris*, the plaintiff participated in an employer health plan, under which the employer was to deduct funds from the plaintiff's weekly paycheck and remit them to the plan to pay for coverage. A successor employer assumed this duty but failed to do so, thereby causing the cancellation of the plaintiff's coverage. As a result, the plan refused to pay medical expenses the plaintiff incurred for treatment of kidney cancer, and as here, the plaintiff brought a state law claim of fraud against the employer. *Id*. at *4-6. The court found that ERISA did not preempt the state law claim because the allegations supporting it occurred in the context of an ERISA plan but did not involve "a direct and unequivocal nexus with the Plan." *Id*. at *6; *see Biondi*, 303 F.3d at 779 (finding no preemption when "the Plan is merely the context in which . . . fraudulent conduct occurred."). As the employer had a duty that was separate from ERISA not to deduct health care premiums from a paycheck and then fail to pay them, the ERISA plan did not form a critical element of the fraud claim at issue. *Id*.

The Court agrees with this analysis but finds it inapplicable under these facts. A tort claim is preempted "where the state law at issue relie[s], for its very operation, on a direct and

unequivocal nexus with ERISA plans." *Biondi*, 303 F.3d at 778. Unlike *Harris*, which involved allegations of improper acts that were tangentially related to an ERISA plan, Counts V and VI are inextricably linked to the question of whether a health insurance plan existed in the first instance. Krukowski alleges that Rabb and the plan fiduciaries: (1) told her that she was covered by an ERISA plan even though they knew that she was not; (2) expressly told her to undergo medical treatment at Northwestern Hospital; (3) had the specific intent of inducing her to pursue such treatment without plan coverage; and, (4) are liable for the $10,000 in medical bills she incurred by relying on their assurances that she was covered by her employer's health plan. (Amend. Compl. at ¶¶ 82-88.)

The existence of Omicron's health insurance plan is integral to these fraud allegations. If the plan existed and Krukowski was covered under its terms, the fraud claims fail as a matter of law. If no plan existed, they could succeed. In either case, the fraud claims do not merely occur within the context of ERISA; instead, "the existence of a . . . plan is a critical element of [Krukowski's] state-law cause of action," *Biondi*, 303 F.3d at 776 (internal quote and citation omitted), which could not be asserted under these facts without direct reference to the plan.

Rather than resembling *Harris*, therefore, the fraud allegations are more analogous to those that supported preemption in *McDonald v. Household Int'l, Inc*., 425 F.3d 424 (7th Cir. 2005). In that case, an employee received a letter from his employer three days prior to his start date confirming that his health insurance would become effective thirty days after he began his job. Coverage did not begin on that date, however, and the employee suffered a catastrophic stroke before his plan benefits started. He brought various tort and breach of contract actions against his employer, including a negligence claim based on the failure to procure insurance.

Finding that the employee was a plan "participant" even though he was not covered at the time of his injury, the Seventh Circuit concluded that the plaintiff's complaint focused on the failure to provide plan benefits that the employer had been promised would be available, a claim that is expressly allowed under 29 U.S.C. § 1132(a)(1)(B). *McDonald*, 425 F.3d at 425, 429. Accordingly, the state law claims were preempted by ERISA.

As in *McDonald*, Krukowski alleges that she was an employee of the Defendants, that they expressly told her that she was covered by an ERISA plan, that pursuant to the employment contract attached to her complaint she was eligible to participate in the plan on the same terms made available to other employees, and that she suffered an injury resulting from the Defendants' misrepresentation. The essence of these claims is that Rabb and the plan administrators intentionally misled her about the existence of an ERISA plan and owe her benefits that should have been paid under it. Although Counts V and VI do not explicitly seek plan benefits, therefore, they function as an alternative means of recovering the benefits that can be pursued under § 1132(a)(1)(B).

As such, the fraud claims conflict with the goals of ERISA. *See Biondi*, 303 F.3d at 776 n.8 (discussing the appropriateness of preemption when a fraud claim conflicts with ERISA's objectives). The Supreme Court has emphasized that Congress intended ERISA to impose a uniform regulatory scheme on employee benefit plans, *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004), and courts should therefore consider "the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, as well as to the nature of the effect of the state law on ERISA plans." *Egelhoff v. Egelhoff*, 532 U.S. 141, 147 (2001) (internal quote and citations omitted). Under the statute, part of ERISA's objective is to

uniformly regulate the duties and liabilities of plan fiduciaries by establishing the "obligation for fiduciaries of employee benefit plans, and . . . provid[ing] for appropriate remedies [and] sanctions."  29 U.S.C. § 1001(b).

Krukowski's fraud claims against Omicron and the Foundation, whom she argues are plan fiduciaries, conflict with this goal by seeking to impose liabilities that contradict those provided for under ERISA.  Counts V and VI seek damages for Krukowski herself based on acts which, if proven, could constitute a breach of fiduciary duty by Omicron and the Foundation.  Under § 1109 of ERISA, a plan fiduciary who violates such duties is liable for money damages to the plan itself, but not to a participant.  29 U.S.C. § 1109(a); *Anweiler*, 3 F.3d at 992; *see also Kenseth v. Dean Health Plan, Inc*., 610 F.3d 452, 464 (7th Cir. 2010) ("ERISA authorizes an award of equitable relief alone to a plan participant suing on her own behalf for breach of fiduciary duty.").  In demanding damages for herself instead of the plan, Krukowski's fraud claims bypass the liability regime imposed on fiduciaries under ERISA and undermine the uniform provisions Congress intended under § 1109.  *See Smith*, 170 F.3d at 617 ("Just as the Plans cannot circumvent Congress's scheme through a state-law claim for breach of fiduciary duty, they cannot circumvent that scheme by using other state causes of action to define the duties and liabilities of an ERISA fiduciary.").

For all these reasons, therefore, the Court finds that ERISA preempts Krukowski's fraud claims in Counts V and VI of the amended complaint.  Preemption, however, does not automatically require the dismissal of a claim unless relief is not possible under an ERISA-based cause of action.  *See McDonald*, 425 F.3d at 428.  For the reasons discussed above, Krukowski cannot seek damages for herself under 29 U.S.C. § 1132(a)(1)(B) without adding the plan as a

defendant.  *See Mote v. Aetna Life Ins. Co.*, 502 F.3d 601, 610 (7th Cir. 2007) ("Generally, in a suit for ERISA benefits, the plaintiff is limited to a suit against the Plan.") (internal quote and citation omitted).  As she has not done so, she cannot get the relief she seeks in Counts V and VI under ERISA, and the Defendants' motion is granted on this issue.  Count V (fraud) and Count VI (consumer fraud) are therefore dismissed.

Notwithstanding, Rule 15(a)(2) directs courts to "freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Leave to amend is particularly warranted after the initial dismissal of a complaint unless it is clear that any amendment would be futile.  *Barry Aviation Inc. v. Land O'Lakes Municipal Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004).  The Court sees no reason why leave would be futile in this case, and Krukowski is given twenty-one days from the entry of this order to file an amended complaint.

## IV.  Conclusion

For the foregoing reasons, the Court finds that Defendants' Motion to Dismiss (Dckt. # 31) is granted in part and denied in part.  Count V and Count VI of the amended complaint are dismissed as preempted by ERISA.  Claims asserted in Count II pursuant to 29 U.S.C. § 1132(a)(1)(B) are dismissed without prejudice for failing to state a cause of action.  Krukowski's claim for money damages in Count II pursuant to 29 U.S.C. § 1132(a)(3) is also dismissed without prejudice for failing to state a cause of action.  Claims asserted under 29 U.S.C. § 1024(b)(1), § 1109(a), as well as claims for a clarification of future rights and any other equitable remedies sought under § 1132(a)(3) are not dismissed, and the motion to dismiss is

denied on these issues.  Plaintiff is given twenty-one days from the entry of this order to file an

amended complaint.

**ENTER ORDER:**

**MARTIN C. ASHMAN**

**Dated:**  March 31, 2011.                                United States Magistrate Judge