UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CYNTHIA KRUKOWSKI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 10 CV 5282 |
| ) | |
| OMICRON TECHNOLOGIES, INC. ) | |
| MARILYN G. RABB FOUNDATION, ) | Magistrate Judge |
| and LIOEL RABB, ) | Arlander Keys |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff's Motion for Sanctions. ECF No. 169. Plaintiff Cynthia Krukowski seeks sanctions against Aetna Health of Illinois ("Aetna") and its attorneys, Shauna Fulbright-Paxton, Dennis Johnson, and Pugh, Jones, and Johnson, P.C. under Federal Rules of Civil Procedure Rule 37 and 28 U.S.C. §1927. Plaintiff seeks the attorney's fees and costs she incurred in pursuing her fraud claim against Omicron Technologies, Inc. ("Omicron") and Lionel Rabb ("Mr. Rabb") as a sanction against Aetna and its counsel for "either negligently or intentionally withhold[ing] documents" from Aetna's document production produced prior to settling this case with Aetna in November 2011.

As Plaintiff acknowledged in the January 11, 2013 presentment of this motion for sanctions, because it has been over a year since she settled her claims with Aetna, she cannot seek to bring Aetna back into the case pursuant to Federal Rule of Civil Procedure 60(b). Resp. at Ex. I (Jan. 11, 2013 Tr. at

3:5-9; 5:10-11); *see also Berwick Grain Co., Inc. v. Illinois Dept. of Agriculture*, 189 F.3d 556, 559 (7th Cir. 1999) ("Under Rule 60(b)(1), mistake, inadvertence, and excusable neglect may provide cause to vacate a final judgment, though only if brought to the district court's attention within a reasonable time but in any event not more than one year after the judgment, order, or proceeding was entered or taken."). Therefore, the Court considers this motion for sanctions against Aetna's attorneys only.

**I.  Background Facts**

This case involves an Aetna health benefit plan ("Plan") that Ms. Krukowski thought was supplied by her employer and in place at the time she received medical treatment in December, 2009. Initially, Ms. Krukowski filed her complaint, alleging Title VII sex discrimination, ERISA violations, breach of contract and fraud claims, against her employer Omicron and the Marilynn G. Rabb Foundation (the "MGRF") (collectively, the "Omicron Defendants") and Omicron's President and CEO, Mr. Rabb. In her fraud claim ("Fraud Claim"), Plaintiff alleges that, when she entered the hospital for treatment in December, 2009, Defendant Mr. Rabb told her that she had health benefit coverage, when in fact, Mr. Rabb knew that Plaintiff did not have coverage.

On April 24, 2011, Ms. Krukowski amended her complaint for the second time and added ERISA and fraud claims against Aetna.

ECF No. 44. In response, in July 2011, Aetna moved to dismiss Plaintiff's claims. ECF Nos. 70-72. In support of its motion, Aetna attached the Certificate of Prior Coverage addressed to Plaintiff that Aetna prepared on November 20, 2009, which stated that her coverage was terminated on October 31, 2009, and an affidavit from an Aetna employee stating that she reviewed and authenticated documents maintained by Aetna pertaining to Omicron in preparing the motion. *Id.* Plaintiff contested Aetna's motion by arguing that she was entitled to discovery prior to responding. The Court denied Aetna's motion to dismiss Plaintiff's ERISA Claim against Aetna without prejudice. In response to Aetna's argument that Plaintiff's fraud allegations failed to allege any fraudulent conduct by Aetna, Plaintiff voluntarily dismissed the fraud claim against Aetna. ECF No. 73.

On August 4, 2011, Plaintiff issued a Request to Produce to Aetna. In these requests, Plaintiff sought all documents relating to communications concerning any and all policies of insurance from Aetna from 2008 to the present, including e-mails and electronically stored information. Mot. at Ex. 1. Shortly after the requests were issued, on August 9, 2011, the parties decided to participate in a settlement conference. The conference date was set for October 3, 2011. ECF No. 79.

After setting the settlement conference date, all of the parties agreed, in order to save on expenses, that additional

discovery and pleadings would be delayed until after the settlement conference. Mot. at p. 4. At that time, the Omicron Defendants and Mr. Rabb filed an agreed motion to extend their discovery deadlines, which the Court granted. ECF No. 87. In addition, Plaintiff agreed with Aetna to delay additional discovery between them until after the settlement conference was held, as long as Aetna produced "the relevant documents regarding the termination of Omicron and Cynthia Krukowski's Plan before the settlement conference." *Id.* Aetna filed an unopposed motion to extend the time to answer the written discovery propounded on it, which the Court granted. ECF Nos. 89, 91. In the motion, Aetna stated:

> Aetna has agreed to provide Plaintiff with a copy of Aetna's claim file for the Plaintiff, as well as the underwriting files concerning Defendants Omicron Technologies, Inc. and the Marilyn G. Rabb Foundation, pursuant to Plaintiff's First Set of Requests for Production, on or before September 6, 2011.

ECF Nos. 89, ¶ 5.

Aetna states that Plaintiff agreed that she would accept these two files (the "Specified Files") of documents in lieu of complete responses to her Rule 33 and 34 discovery requests while all the parties conducted a Settlement Conference. Resp. at p. 2. An Aetna paralegal assisted Aetna's attorneys in collecting these documents. On September 9, 2011, Aetna produced documents to Plaintiff. These documents were bates stamped AK 00001-01000 and were accompanied by a privilege log. Included in these documents

4

was a letter sent to Omicron by Aetna dated November 4, 2009, written by James Dihn, from Aetna Premium Collections, regarding Omicron's outstanding balance of $27,909.80, representing nonpayment of premiums for the months of October and November, 2009. Mot. at Ex. 4. This letter included a payment plan option for Omicron. *Id*. The documents also included an internal e-mail dated November 18, 2009, which stated, "Please terminate Omicron Technologies ... effective 10/31/2009..." Mot. at Ex. 5. Also in the production, there was a letter dated January 6, 2010 to Omicron from Aetna Small Group Collections stating that, while Omicron signed a payment plan for their group's health coverage, Aetna did not receive a payment from Omicron due on December 21, 2009, and so, Omicron's coverage had been terminated as of October 31, 2009 without the privilege of reinstatement. Mot. at Ex. 8. This letter also notes that Aetna received a check in the amount of $22,909.80 from Omicron, but that the check was "returned as unpaid from your banking facility." *Id.*

In its settlement letter to the Court, Aetna stated that it was "little more than a by-stander in the dispute between Omicron and [Ms.] Krukowski, its employee ... [Ms.] Krukowski essentially named Aetna merely as a stalking horse for discovery she hoped will assist in her efforts to prove claims against Omicron." Mot. at Ex. 10. At the settlement conference, Plaintiff settled with

5

Aetna, but not the other Defendants. Aetna was dismissed from this cause of action on November 10, 2011. ECF No. 106.

From December 2011 to March 2012, the remaining parties conducted discovery, including oral discovery. Plaintiff claims that at this time, neither Plaintiff nor Defendants' counsel knew of the existence of additional relevant Aetna documents which had not been produced by Aetna prior to the settlement conference. Mot. p. 7. In March-April 2012, Plaintiff issued subpoenas to Aetna employee Deborah Bingham and an Aetna corporate designee. Thereafter, the deposition of James Dinh was scheduled and Aetna produced additional documents on October 17, 2012 and November 12, 2012. Aetna states that in order to "identify the appropriate witness, Aetna's counsel interviewed two employees and only then learned for the first time that documents and data referred to but not included in the two previously produced Specified Files also existed." Resp. at 2. Aetna produced those additional documents and data promptly, in advance of Aetna's witness' deposition. *Id.*

These new documents produced in October and November, 2012, included a chain of e-mails, of which only a portion of the e-mail chain was previously produced by Aetna, regarding Omicron's overdue payments, the payment plan proposed to Omicron by Aetna and Omicron's payment made, resulting in an e-mail discussion of reinstatement of the Plan, and then eventually the return of

Omicron's check payment due to non-sufficient funds and cancellation of the Plan. Mot. at Ex. 13. These new productions also included "rabbit notes" that showed that Mr. Rabb was told before and after Plaintiff's treatment that the Plan was active. Mot. at p. 16.

Plaintiff argues that there were no documents in the initial production showing that Omicron made any of the payments in the proposed payment plan and therefore, she was misled by Aetna's initial document production. Mot. at p. 5. Now, Plaintiff claims that these subsequently discovered documents, coupled with the deposition testimony of Aetna's witness, convinced her that her Fraud Claim was factually unsupported. Plaintiff moved to dismiss that claim and the Court granted her motion on January 30, 2013. ECF Nos. 173-175.

**II. Discussion**

Plaintiff states that Aetna's initial document production "led all to believe that Aetna acted justifiably and that Omicron's insurance Plan was not in effect in December 2009 because Lionel Rabb failed to make any of the premium payments." Mot. at p. 6. Plaintiff claims that, if these documents had been produced earlier in this litigation, Plaintiff would have handled the settlement conference and the case "entirely differently," including her pursuit of her fraud claim against the other Defendants. Mot. at 12. Instead, she conducted significant

written and oral discovery on the Fraud Count that "cost all the parties involved tens of thousands of dollars in unneeded attorneys fees and expenses." Mot. at p. 16. Plaintiff seeks these fees and costs from Aetna's attorneys as a sanction.

Aetna responds that Plaintiff is free to reach the conclusion that the additional documents changed the facts of the case and would have changed the events of the litigation, "but the evidence is not uncontradicted" and that the motion for sanctions "is an effort to blame Aetna for Plaintiff's own litigation decision to pursue a misguided claim." Resp. at 2. Aetna adds that its attorneys are not subject to sanctions here, because they complied with all court orders in this matter, produced the documents when they knew of them, and in no way acted in bad faith or vexatiously in the way they handled discovery.

### A. Sanctions under Federal Rule of Civil Procedure 37

First, Plaintiff seeks sanctions under Federal Rule of Civil Procedure 37. Rule 37(b) provides for sanctions if a party fails to comply with a court order. "[Rule 37(b)(2)(C)] sanctions may only be imposed where a party fails to comply with a discovery order and displays willfulness, bad faith or fault." *Philips Med. Sys. Int'l, B.V. v. Bruetman*, 982 F.2d 211, 214 (7th Cir. 1992). Plaintiff argues that Aetna violated a court order by not providing all the documents it agreed to prior to the settlement

conference as documented in the unopposed motion to extend the time to answer the written discovery. ECF No. 89. Plaintiff further states that Aetna acted in bad faith by not being diligent in its production. Plaintiff acknowledges that the paralegal that compiled the initial production may not have known about the e-mails that were not included in the files produced, but that the attorneys for Aetna should have investigated further into these partial e-mails and spoken to those who authored and knew of them: James Dihn and Deborah Bingham. Reply at 9-11.

Aetna responds that neither Aetna nor its counsel knew of the subsequently produced documents prior to the settlement conference, nor did they intentionally withhold those documents. Aetna adds that Plaintiff agreed at the time Aetna produced the Specified Files that Aetna had no obligation to conduct a full search for all of the documents and data Plaintiff requested.

The Court acknowledges that the timeline of discovery in this case is unfortunate. If Plaintiff had requested complete responses and answers to her original written discovery to Aetna earlier in the litigation or subpoenaed the Aetna corporate designee sooner, Aetna's subsequent document production may have been produced before additional costs and attorney fees were incurred for discovery on the Fraud Claim. However, Aetna did not violate a court order. The parties agreed to limited discovery prior to the settlement conference and Aetna and its attorneys,

in good faith, produced the applicable documents that they knew of at the time. Aetna did not learn that additional documents existed until more than a year after the settlement conference, and promptly produced them. Resp. at Ex. B, Johnson Declaration, ¶8. Plaintiff has pointed to no document or fact that would have led Aetna or its attorneys to know that the initial document production was incomplete.

In attempting to show bad faith by Aetna, Plaintiff claims that there was no evidence in the initial production that Omicon had made any payment of the payment plan. However, the January 6, 2010, letter produced in the initial production specifically referenced a payment by Omicron that was returned for insufficient funds. As this document was produced, the Court does not find that Aetna was attempting to cover up or hide the information that Omicron agreed to a payment plan or attempted to make a payment.

Aetna did not violate a court order. Aetna agreed to provide the two Specified Files prior to the settlement conference, and did. In addition, Aetna's initial document production, under the circumstances of the parties' agreement, was not in bad fath. Therefore, Plaintiff's request for Rule 37 sanctions is denied.

**B.   Sanctions under Section 1927**

Pursuant to 28 U.S.C. § 1927 ("Section 1927"), a district court may order an attorney who "multiplies the proceedings in

any case unreasonably and vexatiously" to reimburse, personally, the opposing party's "excess costs, expenses, and attorney's fees reasonably incurred because of such conduct." Liability under Section 1927 is justified only in those limited situations when an attorney's conduct is marked by either subjective or objective bad faith. *Pacific Dunlop Holdings, Inc. v. Barosh*, 22 F.3d 113, 120 (7th Cir.1994). The Seventh Circuit has concluded that such sanctions are appropriate (1) in "instances of a serious and studied disregard for the orderly processes of justice," *Ross v. City of Waukegan*, 5 F.3d 1084, 1089 n. 6 (7th Cir.1993), (2) when an attorney "pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound," *Kapco Mfg. Co., Inc. v. C & O Enters*., Inc.,886 F.2d 1485, 1491 (7th Cir.1989) (citation omitted), and/or (3) "where a claim [is] without a plausible legal or factual basis and lacking in justification." *Burda v. M. Ecker Co.*, 2 F.3d 769, 777 (7th Cir.1993) (citations omitted). With this guidance, "it is within the sound discretion of the district court whether to grant or to deny sanctions under § 1927." *Ross*, 5 F.3d at 1089 n. 6.

Ms. Krukowski argues that Section 1927 sanctions should be applied against Aetna's attorneys as their actions were objectively unreasonable and vexatious. She claims that "a reasonably careful attorney would have known, after appropriate inquiry, that it did not produce all of the relevant

11

documentation that was asked for in order to have a fair and equitable settlement conference." Mot. at p. 17. She adds that "any reasonable attorney knows that producing one part of a conversation without producing the entire conversation could create an appearance of a completely different fact pattern ... No doubt these actions or inactions by Aetna's counsel unreasonably and vexatiously multiplied the proceedings in this case." Mot. at 18.

As explained above, many decisions by all parties went into the order of discovery in this case and the method on which the facts came out. However, there were no instances of serious and studied disregard for the orderly processes of justice by Aetna's attorneys and there is no evidence that Aetna's attorneys acted unsound. The attorneys worked with a paralegal employed by Aetna in order to compile the initial document production. Neither that paralegal, nor Aetna's attorneys, knew that the document production was incomplete. As the parties agreed to limit discovery at that time, Aetna did not question additional Aetna employees at that time. When Plaintiff's actions of additional discovery requests required additional actions of Aetna's attorneys, they complied and interviewed additional Aetna employees, discovered the additional documents, and promptly turned them over to Plaintiff. Plaintiff provides no evidence or arguments that show that Aetna's attorney's actions were in bad

faith, vexatious, or unsound. Plaintiff's request for Section 1927 sanctions is denied.

## III. Conclusion

For the reasons set forth above, Plaintiff's Motion for Sanctions is denied.

Dated: February 26, 2013

ENTERED:

_____
ARLANDER KEYS
United States Magistrate Judge